UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:07-CV-139-R

GENERALI U.S. BRANCH,                                                    PLAINTIFF

v.

NATIONAL TRUST INSURANCE COMPANY, ET AL.,                    DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiffs Generali U.S. Branch's Motion for Declaratory Judgment (Docket #51) and Defendant National Trust Insurance Company's Motion for Summary Judgment (Docket #52). Both parties responded to the other party's motion (Docket #54 and 55). This matter is now ripe for adjudication. For the reasons that follow, Plaintiff's motion is DENIED, and Defendant's motion is DENIED.

## BACKGROUND

From September 19, 1999, to September 19, 2000, J.C. Cates Construction ("Insured") had a commercial general liability policy with Plaintiff Generali U.S. Branch. From September 19, 2000 and September 19, 2002, the Insured had a commercial general liability policy ("Policy") with Defendant National Trust Insurance Company.

In December 1998, the Insured contracted with David and Michele Sither to build a house in Paducah, Kentucky. The Insured completed the construction in October 1999, at which time the Sithers moved into the house. A few months after the house's completion, the Sithers began to notice cracks in the brick veneer and the basement of their house. The Sithers made various construction defect complaints to the Insured in March, April, and May of 2000. In August 2000, the Insured made cosmetic repairs to the house.

In 2004, the Sithers filed suit against the Insured in McCracken Circuit Court.  The Sithers alleged that the Insured was liable for negligently constructing the Sithers' house.  Plaintiff agreed to defend and indemnify the Insured, while Defendant declined to do so.  In December 2007, Plaintiff, the Insured, and the Sithers settled the Sithers' law suit.  The Sithers were paid $175,000 to compromise their negligent construction claim.

On August 17, 2007, Plaintiff filed this declaratory judgment action.  Plaintiff alleges that Defendant was obligated to defend and indemnify the Insured against the Sithers' claim for property damage.  The parties have now filed cross motions for summary judgment.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case.  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "the

2

mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

## I.  TRIGGER OF COVERAGE

"An 'occurrence' policy covers any losses for which the insured is liable, no matter when the damage is discovered . . . so long as the damage occurs during the policy period."  Am. Jur. 2d *Insurance*  § 687.  "Under an occurrence-based comprehensive general liability policy, the "continuous trigger" theory applies to determine coverage where the damage can be characterized as continuous or progressive."  Am. Jur.2d *Insurance* § 688.  "Under that theory, bodily injury and property damage that are continuous or progressively deteriorating throughout successive policy periods are covered by all policies in effect during those periods."  *Id.*  Plaintiff argues that under a "continuous trigger" theory of recovery, Defendant was obligated to provide coverage, defend, and indemnify the Insured against the Sithers' claim.

"[T]he trigger of coverage issue concerns whether an insurance policy . . . was in effect at the time of the loss.  *Inland Waters Pollution Control, Inc. v. National Union Fire Ins. Co.*, 997 F.2d 172, 179 (6th Cir. 1993).  "In reality, reference to trigger theories is more useful in describing what has been decided than in determining what the decision should be in a given case."  *Dow Chemical co. v. Associated Indemnity Corp.*, 724 F. Supp. 474, 479 (E.D. Mich. 1989).  "Consequently, trigger rulings are most appropriately derived by reference to the operative policy language, as opposed to the judicial gloss placed upon similar language in ostensibly analogous cases."  *Id.*

## II. "PROPERTY DAMAGE" UNDER THE POLICY

Therefore, the Court will look to the language of the Policy to determine if the insurance was in effect at the time of the loss.  Under Kentucky law, the interpretation and construction of an insurance contract is a matter of law for the court.  *Morganfield National Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky. 1992). The language of an insurance policy will be given its plain meaning.  *See St. Paul & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226 (Ky. 1994).  Insurance contracts will be liberally construed and all doubts resolved in favor of the insured,  *Kentucky Farm Bureau Mutual Ins. Co. v. McKinney*, 831 S.W.2d 164, 166 (Ky. 1992), and any ambiguity in an insurance policy will be construed to effectuate the purpose of indemnity.  *James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991).

Under the Policy, Defendant will pay those sums that the Insured becomes legally obligated to pay as damages because of "property damage" to which the insurance applies.  The insurance applies to property damage if (1) the property damage is caused by an "occurrence" that takes place in the "coverage territory" and (2) the property damage occurs during the policy period.  Under the plain language of the policy, coverage is triggered if there is an "occurrence" in the coverage territory  that causes "property damage" during the policy period.

Defendant argues that under the Policy, coverage is not triggered because the Sithers' claim did not qualify as an "property damage" caused by an "occurrence."  An "occurrence" under the Policy means "an accident, including continuous or repeated exposure to substantially the same harmful conditions."  Under Kentucky law "occurrence" is to be 'broadly and liberally construed in favor of extending coverage to the insured."  *James Graham Brown Foundation*, 814 S.W.2d at

4

278.  The alleged negligent construction qualifies as an occurrence under the Policy.  The property damage that allegedly resulted from the negligent construction "was not actually and subjectively intended or expected by the insured."  *Id.*  Because there is no evidence that the Insured subjectively intended any damage to the Sither's property, the negligent construction qualifies as an "occurrence" under the Policy.

Defendant focuses on the Policy's requirement that coverage is only triggered if there is "property damage."  The Policy defines "property damage" as "physical injury to tangible property."  Under the plain language of the Policy, it appears that the damages alleged by the Sithers is property damage as defined in the Policy.  The Sithers allege that their house has cracks in the brick veneer, cracks in the footing, and cracks in the drywall, which qualifies as "a physical injury to tangible property."

However, "[m]ost policies of commercial general liability insurance exclude the insured's faulty workmanship from coverage.  The rationale for such exclusion is that faulty workmanship is not an insurable 'fortuitous event,' but a business risk to be borne by the insured."  9 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 129:11 (3d ed. 1997).  As such, many states have held that a commercial general liability policy does not cover allegations of property damage cause by the faulty workmanship in the work product itself.  *See e.g. Yegge v. Integrity Mutual Ins. Co.*, 534 N.W.2d 100) (Iowa 1995).  A judge in this district, when confronted with this same issue, found this argument persuasive and predicted that Kentucky law would follow such a policy.  *Assurance Co. of America v. Dusel Builders, Inc.*, 78 F. Supp. 2d 607, 609 (W.D. Ky. 1999).

More recently, the Kentucky Court of Appeals held that given the broad coverage of a commercial general liability policy under Kentucky law, such damage does fall within the definition

of "property damage" in a commercial general liability policy.  *Motorists Mutual Ins. Co. v. Cincinnati Ins. Co.*, No. 2007-CA-818-MR, 2008 WL 746689, *4 (Ky. Ct. App. 2008).  However, that decision is currently on discretionary review before the Kentucky Supreme Court.  The Supreme Court's ruling should clarify Kentucky law as to this issue.

In the absence of a Kentucky Supreme Court decision on this issue, the Court is inclined to follow the reasoning of the Kentucky Court of Appeals.  Defining property damage to include damage to the Insured's work product is consistent with Kentucky Supreme Court precedent requiring insurance contracts to be interpreted using their plain language.  This conclusion receives further support from the Kentucky Supreme Court's holding that commercial general liability policies are designed to cover broad risks.  *Bituminous Casualty Corp. v. Kenway Contracting, Inc.*, 240 S.W.3d 633, 640 (Ky. 2007).

For these reasons, the Court finds that the Slithers' allegations qualify as an "occurrence" resulting in "property damage" under the Policy.  This is, however, a close issue.  There is out-of-state precedent reaching a contrary conclusion, and predicting how any court will decide this issue is problematic.  Should the Kentucky Supreme Court reach a different conclusion in *Motorists Mutual Ins. Co.* than that predicted in this opinion, the Court will revisit this finding.

## III.  PROPERTY DAMAGE DURING THE POLICY PERIOD

However, simply because the Sithers have alleged an occurrence that resulted in property damage does not mean that coverage was automatically triggered.  Under the Policy, Defendant must pay such sums that the Insured becomes legally obligated to pay because of property damage, but only if the property damage occurs during the policy period.  Defendant argues that all of the damage to the Sithers' house occurred either before or after the Insured obtained the Policy from

6

Defendant.

There is a genuine issue of material fact as to whether damage occurred during the policy period, which precludes summary judgment.  In David Sither's deposition, he testified that a crack in the kitchen ceiling appeared around 2001, which is during the policy period.  He also testified that other cracks may have gotten longer during the policy period.  In addition, he testified that his golf cart door started sticking in 2001.  While Defendant may argue that the damage occurred earlier and Sither simply failed to notice it, this does not entitled Defendant to summary judgment.  Taking the evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that Sither first noticed the property damage during the policy period because it actually occurred during the policy period.

## IV.  THE "YOUR WORK" EXCLUSION

Even if property damage did occur during the policy period, Defendant is not obligated to indemnify the Insured if the damage falls under one of the Policy's exclusions.  Defendant argues that the "your work" exclusion bars coverage.  The Policy specifically excludes coverage for "'property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard."  Therefore to exclude coverage under this provision, the property damaged must be (1) to the Insured's work and (2) included in the "products-completed operations hazard."

The Policy defines "your work" as "work or operations performed by you or on your behalf; and materials, parts or equipment furnished in connection with such work or operations."  The house built by the Insured falls within this definition.  Because any negligent construction was performed by the Insured or on the Insured's behalf, any damage to the house would be damage to the Insured's

7

work.

The "products-completed operations hazard" includes all property damage occurring away from the premises and arising out of the Insured's work, except work that has not yet been completed or abandoned.  The property damage in this case occurred away from the Insured's premises and was alleged to arise from the Insured's work.

Work is completed when all of the work called for in the contract has been completed.  Work that may need service, maintenance, correction, repair or replacement, but which is otherwise completed, will be treated as completed.  Based on the evidence before the Court, the Sithers' house was completed before the Insured received the Policy.  For this reason, the property damage to the Sithers' house is falls within the products-completed operations hazard, and is excluded from coverage by the "your work" exclusion.

However, the "your work" exclusion "does not apply if the damaged work . . .was performed on your behalf by a subcontractor."  In this case, it appears from the record that the brick veneer and the drywall were installed on the Insured's behalf by subcontractors.  Any property damage to the drywall or brick veneer is not excluded, even if work fits within the definition of "your work" because it was performed on the Insured's behalf.

Plaintiff argues that the "your work" exclusion should not apply even to work that was performed by the Insured.  Plaintiff argues that the property damage to the Sithers' house was not cause by the Insured's negligence, but was instead caused by an underground spring.  Although the Insured denies any negligent construction, the Sithers' state court complaint is based on a negligent construction theory.  In addition, the money was payed to the Sithers to compromise the Sithers' claim was paid in settlement of a negligent construction claim.  Finally, the Policy only applies to

8

sums that the insured is "legally obligated" to pay as damages. If the Insured did not negligently cause the Sithers' property damage, then the Insured was not legally obligated to pay the $175,000, which means that coverage under the Policy was not triggered. For these reasons, damage to the Insured's own work is excluded, and Defendant is only required to indemnify the Insured for property damage to work performed by a subcontractor.

## V.  CONTINUOUS DAMAGE

Plaintiff requests that the damages be allocated pro rata between the parties. A few states have adopted such an equitable allocation in construction defect cases where the property damage is continuous or progressively deteriorating. *See e.g. USF Ins. Co. v. Clarendon America Ins. Co.*, 452 F. Supp. 2d 972 (C.D. Cal. 2006).

The Kentucky Supreme Court has upheld a pro rata distribution in a case involving insurance coverage for contamination at a nuclear waste disposal site. *Aetna Casualty & Surety Co. v. Commonwealth*, 179 S.W.3d 830 (Ky. 2005). However, the trial court in *Aetna* only pro rated the coverage among the parties after first determining that the property damage "was ongoing and continuous during the various policy periods" and that "the damage was not divisible or allocable during and between the policy periods." *Id.* at 842. While there is some evidence that the damage to the Sithers' house was ongoing and continuous through several policy periods, the Court is not convinced that the damage is not divisible or allocable between the policy periods. As discussed above, Defendant must indemnify the Insured for any damage to a subcontractor's work that occurred during the policy period. So long as a reasonable fact-finder can determine what damage to the subcontractor's work occurred during the various policy periods, the Court cannot make an equitable allocation under *Aetna*. Should the proof at trial convince the Court that it is not possible

for a reasonable fact-finder to make such a determination, Plaintiff may renew its request for equitable allocation.

## VI. FORTUITY AND THE LOSS IN PROGRESS DOCTRINE

Defendant next argues that the loss was not "fortuitous," and therefore Defendant is under no obligation to provide the Insured any coverage. Under Kentucky law, "the requirement that loss be fortuitous, *i.e.* not intended, is a concept inherent in all liability policies." *Aetna Casualty & Surety Co. v. Commonwealth*, 179 S.W.3d 830, 836 (Ky. 2005). Under the fortuity concept, the Insured is entitled to coverage unless it had specific and subjective intent to cause the property damage to the Sithers' house. *Id.* In this case, there is no evidence that the Insured had such intent.

A variant of the fortuity doctrine in knows as the "loss in progress" rule. *Inland Waters Pollution Control, Inc.*, 997 F.2d at 176. "The loss in progress doctrine bars coverage where the insured is aware that a specific loss is imminent or still occurring at the time the policy becomes effective." *Pizza Magia Int'l., LLC v. Assurance Co. of Amer.*, 447 F. Supp 2d 766 (W.D. Ky. 2006). "[T]he principle that losses which exist at the time of the insuring agreement, or which are so probable or imminent that there is insufficient 'risk' being transferred between the insured and the insurer, are not proper subjects of insurance. *American & Foreign Ins. Co., Inc. v. Sequatchie Concrete Services, Inc.*, 441 F.3d 341, 344 (6th Cir. 2006).

Although the Kentucky Supreme Court has never specifically adopted the loss in progress doctrine, the doctrine has been described as a fundamental principle of insurance law. *Inland Waters*, 997 F.2d at 178. Additionally, the Kentucky Supreme Court has relied on the Eastern District of Michigan's definition of the loss in progress doctrine in its analysis of the fortuity doctrine. *See Pizza Magia Int'l, LLC*, 447 F. Supp. 2d at 776 (citing *Aetna Casualty & Surety Co.*,

10

179 S.W.3d at 836) . Therefore, the Court predicts that the Kentucky Supreme Court would adopt the Sixth Circuit's formulation of the loss in progress doctrine.

The loss in progress doctrine applies "where the insured has subjective knowledge of the damages that could underlie a legal claim against it." *American & Foreign Ins. Co., Inc.*, 441 F.3d at 346. Taking the evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that the Insured did not have subjective knowledge of the damages underlying the Sithers' claim at the time it receive the Policy. At that time, the Sithers had only complained of cracking in the brick veneer, which the Insured had attempted to repaired. The Insured claims that at the time he believed that the cracking was caused by a change in temperature, and that he believed that his cosmetic repairs had resolved the issue.

Defendant argues that as a contractor, the Insured must have been aware of the dangers of settlement on a new construction site, and therefore was aware that the threat of loss to the Sithers' house was an immediate danger. However, this is an inference that can only be made by the jury after hearing all the relevant evidence, as the Court cannot draw such an adverse inference against the nonmoving party in a motion for summary judgment.

## VII. DUTY TO DEFEND

An insurance company's duty to defend the insured is separate from its duty to pay a claim. *Wolford v. Wolford*, 662 S.W.2d 835, 838 (Ky. 1984). Insurers have an obligation to defend if there is an allegation "which potentially, possibly or might come within the coverage of the policy." *James Graham Brown Found., Inc.,* 814 S.W.2d at 279. The determination of whether a defense is required must be made at the outset of the litigation by reference to the complaint and the known facts. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001).

The Court finds that Defendant had a duty to defend the Insured.  This conclusion is based on the Court's prediction that the Kentucky Supreme Court would hold that negligent construction that causes damage to work performed by a contractor or performed on a contractor's behalf qualifies as an "occurrence" that causes "property damage" under a commercial general liability policy.  According to Defendant's denial of coverage letter, at the time Defendant denied coverage it was aware that bricks were cracking in the veneer of the Sithers' house, and that in August of 2002, the Insured was notified of an additional cracked brick.  Given the Court's finding that the Policy requires Defendant to indemnify the Insured for property damages that to the brick veneer or the drywall that occurred during the policy period, the Court finds that the Sithers' claim potentially fell within the coverage of the Policy, which triggered the duty to defend.

Defendant argues that even if it had a duty to defend, Plaintiff does not have a right to contribution from Defendant, as the right to contribution is personal to each insurer.  Defendant also reserves the right to dispute the reasonableness of the costs of defense and the $175,000 settlement.  As these issues were only raised in Defendant's response brief, the Court declines to address them at this time.

## VII.  SUMMARY

In summation, the Court finds that Defendant is obligated to indemnify the Insured any sums that the Insured was legally obligated to pay the Sithers for property damage to the Sithers' house that occurred during the policy period, so long as the damage occurred to work performed by a subcontractor.  At this time, the Court finds that while the damage to the Sithers' house may have been continuous and progressive, the Court cannot find that the damage was not divisible or allocable during the policy periods, which precludes a pro rata allocation of damages between the

parties.  The Court also finds that, based on the Court's prediction of Kentucky law, Defendant had a duty to defend the Insured in the Sithers' law suit.  Finally, the issue of what, if any, damages occurred during the policy period, as well as the issue of whether the Insured was aware of a loss in progress at the time he purchased the Policy, are issues that must be resolved by the jury.

The Court notes that parties are facing an uncertain legal environment, as the Kentucky Supreme Court is currently considering a case that could greatly alter Defendant's potential liability. This uncertainty is amplified by complexities of both the Court's legal rulings concerning various Policy coverage issues, including "occurrence", "property damage", "trigger of coverage", "your work", "products-completed operations hazard", "continuous damage", the "fortuity and loss in progress doctrines", as well as potentially complicated factual issues should this case go to trial.

In contrast to these complex legal and factual issues, the parties are in essence arguing over how to divide the $225,000 Plaintiff spent in indemnifying and defending the Insured.  As the cost of resolving all of these issues with finality will likely far exceed the possible realm of damages in this case, the Court invites and encourages the parties to strongly consider mediation.

## CONCLUSION

For the above reasons, Plaintiff's motion is DENIED, and Defendant's motion is DENIED. An appropriate order shall issue.

13